## KINCAID v. LEE COUNTY STATE BANK.
### (No. 7181.)

Court of Civil Appeals of Texas. Austin.

Feb. 23, 1928.

Rehearing Denied March 21, 1928.

1. **Bills and notes** ⬅️497(3)—Bank suing on collateral note invalid between original parties has burden of pleading and proving loss of original debt if denied recovery (Negotiable Instruments Act, § 57).

Bank suing on note held by it as collateral, and which was invalid as between original parties because it was given for gambling debt, has burden of affirmatively pleading and proving that it would lose its original debt if it did not collect collateral note, and Negotiable Instruments Act, § 57 (Rev. St. 1925, art. 5935), does not relieve bank from such burden.

2. **Bills and notes** ⬅️338—Bank making itself payee of collateral note which was given in renewal of invalid note payable to another held not "holder in due course" (Negotiable Instruments Act, §§ 52, 57).

Though, generally, a bona fide holder of a collateral note is a holder for value, bank which voluntarily made itself payee in collateral note on which it sued and which was given in renewal and extension of an invalid note payable to another held not a "holder in due course," under Negotiable Instruments Act, §§ 52, 57 (Rev. St. 1925, art. 5935).

[Ed. Note.—For other definitions, see Words and Phrases, First and Second Series, Holder in Due Course.]

3. **Bills and notes** ⬅️357—Holder of collateral, unenforceable as between original parties, can recover only amount sufficient to pay original debt.

Notwithstanding the clear and explicit language of Negotiable Instruments Act, § 57 (Rev. St. 1925, art. 5935), a holder of a collateral note, unenforceable as between original parties, can recover only a sufficient amount thereon to pay the original debt.

4. **Bills and notes** ⬅️357—Holder of collateral note void as between original parties can collect thereon only when necessary to prevent loss to holder.

Where a collateral note is void as between original parties thereto, a holder thereof can collect it only if and when such collection is necessary to prevent loss to him.

5. **Bills and notes** ⬅️334—Holder of collateral note could not, after notice of its infirmity, collect any sum added to original debt after such notice.

Bank suing as holder of collateral note could not, after it was notified of infirmity in note in defendant's answer, collect any sum added by it to original debt after such notice.

Appeal from District Court, Lee County; M. C. Jeffrey, Judge.

Action by the Lee County State Bank against F. T. Kincaid. Judgment for plaintiff, and defendant appeals. Reversed and remanded for new trial.

G. B. Fenley, of Uvalde, and W. B. Teagarden, of San Antonio, for appellant.

E. T. Simmang, of Giddings, for appellee.

BAUGH, J. This appeal is from a judgment for $6,071.97, in favor of the Lee County State Bank, as payee, hereinafter referred to as the bank, against F. T. Kincaid, as maker, and being the amount of the principal, interest, and attorney's fees of a note for $5,000. In its original petition the bank sued as the owner and payee of said note. Kincaid defended on the ground that said note was given in renewal and extension of a note formerly given to J. H. Mundine in payment of a gambling debt incurred in a poker game in Mexico City. By supplemental petition the bank alleged that on or about November 7, 1923, it obtained said note for a valuable consideration, before maturity, without notice of any vice or infirmity therein, as collateral security to an indebtedness of J. H. Mundine and R. L. Peebles to said

bank, of approximately $10,000; that said collateral note had been renewed from time to time, in which last renewal the bank itself, instead of Mundine, was named as payee, but that same was at all times held by the bank as collateral security for the principal debt of Mundine and Peebles.

The evidence shows conclusively that the only consideration for the original note was the gambling debt, and that it was wholly unenforceable by Mundine against Kincaid. It also shows that the bank paid Mundine no money for the renewal note, nor did it give him any credit therefor on his and Peebles' indebtedness to the bank; that it held same entirely as collateral; and that it brought suit thereon at the request of Mundine.

[1] The first contention of appellant is that, upon his showing that the note so held by the bank as collateral was illegal and invalid as between the original parties thereto, the duty then devolved upon the bank to show the amount of the original debt due by Mundine to the bank, and that unless the bank be permitted to collect the note in question it would lose its original debt. We sustain this contention. Nowhere did the bank plead that it would lose its debt if it did not collect this collateral, nor does the evidence show that it would. Nor was there any competent evidence showing how much the original debt either of Mundine, or of Mundine and Peebles, to the bank was at the time said collateral note was taken, at the time the suit was filed, or at the time Kincaid filed his answer setting up the invalidity of said note. The bank held other collateral notes secured by mortgages on live stock, the amount or value of which was not proved. The cashier of said bank also testified that Mundine was worth, above exemptions and debts, between $50,000 and $75,000; and that Peebles was worth, above exemptions, approximately $10,000. In brief, the bank wholly failed either to plead or prove that it would lose its original debt against Mundine and Peebles, if denied a recovery against Kincaid on the collateral note sued upon.

The equitable doctrine is now well established that such duties are essentially incumbent upon the holder of collateral where such collateral is invalid as between the original parties thereto, and such facts must be affirmatively alleged and proved. City Nat. Bank of Galveston v. Underwood (Tex. Civ. App.) 293 S. W. 941, writ of error refused; City Nat. Bank v. Pearce (Tex. Civ. App.) 291 S. W. 291, and cases there cited; Farwell v. Tingle (Tex. Civ. App.) 280 S. W. 232.

[2] Appellee insists, however, that it was a "holder in due course," under section 52 of the Negotiable Instruments Act, and under section 57 thereof entitled to recover the full amount of said note, regardless of any in-

firmity in the note as between the original parties thereto. See article 5935, R. S. 1925.

It is a general rule that a bona fide holder of collateral is a "holder for value." It has also been held by the Supreme Court that the payee in a note is not a "holder in due course," under the Negotiable Instruments Act. J. I. Case Threshing Machine Co. v. Howth, 116 Tex. 434, 293 S. W. 800. In the instant case the bank had voluntarily made itself a payee in the note sued upon, which was given in renewal and extension of an invalid note payable to Mundine and held by it as collateral. It thereafter sued upon said note asserting title thereto in its own name as payee. Only in reply to defenses thereto did said bank by supplemental petition, not by amended petition, allege that said note was held by it only as collateral.

[3, 4] Regardless of that, however, and conceding that said bank was a "holder in due course," it was not relieved by section 57 of the Negotiable Instruments Act from the burdens above set forth, imposed upon it on equitable grounds. Notwithstanding the clear and explicit language of section 57, it is now well settled that a holder of collateral, unenforceable as between the original parties, can recover only a sufficient amount thereon to pay the original debt. Chapman v. Dallas (Tex. Civ. App.) 267 S. W. 535; Peterson v. Rochelle (Tex. Civ. App.) 287 S. W. 1105. And equity adds further, where such collateral is void as between the original parties thereto, that such holder can collect same then only if and when such collection is necessary to prevent loss to him. To hold otherwise would permit, as suggested in appellant's brief, such holder to use as a sword what the law intended to be used only as a shield. If not in fact necessary to pay Mundine's debt to the bank, the collection of said note would enable the bank to do for Mundine, and at his request, what he could not do for himself, i. e., collect a gambling debt.

[5] There was testimony which indicated that after Kincaid filed his answer in October, 1926, to the bank's suit, setting up the invalidity of said note, Mundine and Peebles' debt to the bank was reduced to about $5,000, and that additional credit was extended to them by the bank after that. Certainly, the bank cannot enfold itself in the cloak of good faith as to any credit extended on the validity of said Kincaid note, after it had been thus notified of its infirmity in appellee's answer to its own suit thereon; and in no event would it be entitled to collect out of its collateral any sum added by it to the original debt of Mundine and Peebles after such notice.

For the reasons stated, the judgment of the trial court is reversed and the cause remanded for another trial.

Reversed and remanded.